IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRITZI BENESCH, | No. C-07-03784 EDL |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO AMEND ANSWER AND DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SHARON GREEN, | |
| Defendant. | |

Plaintiff Fritzi Benesch is suing her former attorney, Defendant Sharon Green, for legal malpractice arising from a mediation that occurred on April 17 and 18, 2006. The mediation took place in connection with a state court action brought by Plaintiff against her daughter Valli Benesch Tandler, her son-in-law Robert Tandler, her estate planning attorney William Hosisington, and the law firm of Orrick Herrington & Sutcliffe. The mediation culminated in the execution of a document entitled Terms of Settlement ("Term Sheet") by Plaintiff and the Tandlers. See Declaration of Fritzi Benesch Ex. A. In February 2007, Plaintiff argued in state court that the Term Sheet did not accurately reflect her intent with regard to provisions for her other daughter, Connie Benesch. In April 2007, a state court judge enforced the Term Sheet against Plaintiff. See Declaration of Jonathan Bass Ex. F.

Plaintiff filed this action on July 24, 2007. On December 10, 2007, this Court stayed this action pending the final outcome of the underlying state court action. On August 4, 2009, the Court ordered that discovery in this case would open on September 17, 2009 based on the parties' representation that all state court proceedings would likely be resolved by early August 2009.

On October 6, 2009, Defendant filed a Motion to Modify Case Management Order to Permit


Filing of Motion to Amend and Granting Leave to File Amended Answer, and a Motion for Summary Judgment. Plaintiff filed a statement of non-opposition to Defendant's Motion to Modify Case Management Order to Permit Filing of Motion to Amend and Granting Leave to File Amended Answer. The Motion for Summary Judgment was fully briefed. The Court held a hearing on November 24, 2009. For the reasons stated at the hearing and in this Order, the Court grants Defendant's Motion to Modify Case Management Order to Permit Filing of Motion to Amend and Granting Leave to File Amended Answer and denies without prejudice Defendant's Motion for Summary Judgment.

**Motion to Amend Answer**

A party may seek leave of court to amend its pleading, which should be freely given when justice requires. See Fed. R. Civ. P. 15(a)(2). Defendant seeks to amend her answer that was filed on July 24, 2007 in state court to include an additional defense that Plaintiff's complaint is barred by California's mediation confidentiality statutes. See Cal. Evid. Code §§ 1115, et seq. Plaintiff filed a notice of non-opposition to Defendant's motion. Because leave is freely given and there is no opposition, Defendant's Motion to Amend Answer is granted.

**Motion for Summary Judgment**

Defendant seeks summary judgment on the ground that California's mediation confidentiality provisions preclude Plaintiff from establishing her malpractice claim and Defendant from meaningfully defending herself.

**Facts**

Plaintiff retained Defendant in 2000 to represent her in an action against her daughter and son-in-law (the Tandlers), attorney William Hoisington, and the law firm of Orrick Herrington & Sutcliffe. See Benesch Decl. ¶ 2; Declaration of Sharon Green ¶ 2. In that lawsuit, Plaintiff alleged that the Tandlers, Hoisington, and Orrick induced her to transfer a substantial portion of her ownership interest in the corporation that Plaintiff and her husband had founded. See Benesch Decl. ¶ 2. Part of the relief that Plaintiff sought in that lawsuit was to ensure that her youngest daughter, Connie, was not taken advantage of by the Tandlers. See id. ¶ 3.

Plaintiff, represented by Defendant, participated in the mediation on April 17 and 18, 2006.

See Benesch Decl. ¶ 4; Green Decl. ¶ 3. Connie was not present at the mediation, although Defendant spoke to her once by telephone before the mediation to let her know that it was taking place, and then once during the mediation. See Green Decl. ¶ 4. Plaintiff was concerned that Connie not be cheated out of her rightful inheritance. See Benesch Decl. ¶ 5. On the second day of the mediation, Plaintiff was provided with a document entitled "Terms of Settlement." See id. ¶ 6; Ex. A; Green Decl. ¶ 3. Plaintiff did not intend that the Term Sheet could be consummated without provisions to protect Connie's financial interests, and without Connie's approval. See id. ¶ 8. Approximately one week after the mediation, Plaintiff retained new counsel, William McCrane. See Green Decl. ¶ 5.

In May 2006, the Tandlers filed an action in San Francisco Superior Court seeking to enforce the April 18, 2006 Term Sheet. See Bass Decl. ¶ 5. On September 26, 2006, Plaintiff retained the law firm of Coblentz, Patch, Duffy & Bass to replace Mr. McCrane. See Bass Decl. ¶ 4. On approximately December 14, 2006, the Tandlers filed a motion seeking enforcement of the settlement. See id. ¶ 7; Ex. D. In that case, Defendant submitted a declaration on behalf of Plaintiff that included information regarding what occurred during the mediation that resulted in the Term Sheet. See Bass Decl. Ex. E. The question in that enforcement case was whether Connie's approval of the Term Sheet was a condition precedent to its enforcement. See id. ¶ 9. On April 30, 2007, finding that nothing in the Term Sheet explicitly required Connie's approval or participation, and that the Term Sheet contained a statement that it was binding and enforceable, the state court granted the motion to enforce. See Bass Decl. ¶ 10; Ex. F. Plaintiff appealed the state court decision, and the appeal was resolved by settlement, part of which involved Plaintiff disclaiming her contingent interest in the future sale of two properties to avoid adverse tax consequences. See Bass Decl. ¶ 11.

**Legal Standard**

Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury

3

1    to return a verdict for the nonmoving party. Id. The court must view the facts in the light most
2    favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn
3    from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The
4    court must not weigh the evidence or determine the truth of the matter, but only determine whether
5    there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

6        A party seeking summary judgment bears the initial burden of informing the court of the
7    basis for its motion, and of identifying those portions of the pleadings and discovery responses that
8    demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317,
9    323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively
10   demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue
11   where the nonmoving party will bear the burden of proof at trial, the moving party can prevail
12   merely by pointing out to the district court that there is an absence of evidence to support the
13   nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party "may
14   not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts
15   showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250. If the
16   nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to
17   judgment as a matter of law." Celotex, 477 U.S. at 323.

18   **Request for Judicial Notice**

19       Defendant requests judicial notice of five documents: (1) the complaint originally filed in
20   state court before the removal of this case to federal court; (2) the amended complaint for damages
21   filed in 2002 in the underlying state court case; (3) the April 30, 2007 order enforcing settlement
22   agreement; (4) Plaintiff's Motion for Protective Order filed on July 12, 2006 in state court; and (5)
23   Plaintiff's Reply in Support of Motion for Protective Order filed on July 17, 2006 in state court.
24   Defendant's request was unopposed. The Court takes judicial notice of these matters of public
25   record. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

26   **Discussion**

27       Mediation confidentiality is protected by California Evidence Code sections 1115-1128.
28   "The Legislature designed the mediation confidentiality statutes to 'promote "a candid and informal

4

exchange regarding events in the past.... This frank exchange is achieved only if the participants know that what is said in the mediation will not be used to their detriment through later court proceedings and other adjudicatory processes." [Citations.]'" Simmons v. Ghaderi, 44 Cal.4th 570, 578 (2008) (quoting Foxgate Homeowners' Ass'n v. Bramelea California, Inc., 26 Cal.4th 1, 14 (2001)).

Evidentiary restrictions are not limited to communications made in the course of mediation. Rather, communications and writings made for "the purpose of, in the course of, or pursuant to, a mediation or mediation consultation" are not admissible or subject to discovery. See Cal. Evid. Code § 1119; see also Wimsatt v. Superior Court, 152 Cal.App.4th 137, 150-51 (2007) (stating that "the restriction applies to any written or oral communication made 'for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation,' as well as all 'communications, negotiations or settlement discussions by and between participants in the course of a mediation or a mediation consultation . . . .'") (quoting Cal. Evid. Code § 1119). Statements made during mediation and mediation materials are confidential not only during the mediation, but also after the mediation ends. See Cal. Evid. Code § 1126 ("Anything said, any admission made, or any writing that is inadmissible, protected from disclosure, and confidential under this chapter before a mediation ends, shall remain inadmissible, protected from disclosure, and confidential to the same extent after the mediation ends.").

The statute contains certain limited exceptions to its bar on admissibility. For example, Evidence Code section 1122 states:

> (a) A communication or a writing, as defined in Section 250, that is made or prepared for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if either of the following conditions is satisfied:
>
> (1) All persons who conduct or otherwise participate in the mediation expressly agree in writing, or orally in accordance with Section 1118, to disclosure of the communication, document, or writing.
>
> (2) *The communication, document, or writing was prepared by or on behalf of fewer than all the mediation participants, those participants expressly agree in writing, or orally in accordance with Section 1118, to its disclosure, and the communication, document, or writing does not disclose anything said or done or any admission made in the course of the mediation.*

Cal. Evid. Code § 1122 (emphasis added); see also Wimsatt, 152 Cal.App.4th at 151 (other

5

exceptions noted). The statutory scheme also "does *not* protect items admissible or subject to discovery merely because they were introduced in mediation." Wimsatt, 152 Cal.App.4th at 157 (citing Rojas v. Superior Court, 33 Cal.4th 407, 417 (2004)) (emphasis in original). "Of course, that witness statements 'prepared for the purpose of, in the course of, or pursuant to, a mediation' are protected from discovery under section 1119 does not mean that *the facts* set forth in those statements are so protected." Rojas, 33 Cal.4th at 423 n. 8 ("Under section 1120, subdivision (a), because facts known to percipient witnesses constitute "[e]vidence otherwise admissible or subject to discovery outside of a mediation," those facts do not "become inadmissible or protected from disclosure solely by reason of [their] introduction or use in a mediation" through witness statements prepared for the purpose of, in the course of, or pursuant to, the mediation. Otherwise, contrary to the Legislature's intent, parties could use mediation "as a pretext to shield materials from disclosure.") (citation omitted) (emphasis in original).

The broad policy of mediation confidentiality contained in the statutes is strictly enforced and the California Supreme Court has refused to allow implied exceptions: "Where no express waiver of confidentiality exists, judicially crafted exceptions to mediation confidentiality are not appropriate." See Foxgate, 26 Cal.4th at 15 ("To carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme . . . unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception."); see also Simmons, 44 Cal.4th at 582; Wimsatt, 152 Cal.App.4th at 152. Here, there is no evidence of an express waiver by Defendant or any other mediation participants. Courts strictly apply the mediation confidentiality statutes even when doing so may lead to an inequitable result. See, e.g., Foxgate, 26 Cal.4th at 17 (recognizing that the application of the mediation confidentiality statutes in that case left unpunished sanctionable conduct, but deferring to Legislature to balance competing public policies and to create exceptions to the statutes); Wimsatt, 152 Cal.App.4th at 162-63 ("The stringent result we reach here means that when clients, such as Kausch, participate in mediation they are, in effect, relinquishing all claims for new and independent torts arising from mediation, including legal malpractice causes of action against their own counsel.") (emphasis added); Eisendrath v. Superior Court, 109 Cal.App.4th 351, 365 (2003) (declining to find an implied waiver of the mediation confidentiality

6

provisions even though the statutory scheme "effectively gives control over evidence of some sanctionable misconduct to the party engaged in the misconduct.").

Defendant notes that Plaintiff's sole claim for negligence necessarily rests on evidence of what occurred at the mediation prior to the execution of the Term Sheet, and argues that the Term Sheet alone is not enough to prove negligence. To establish her claim for malpractice, Plaintiff will have the burden of proving: "(1) the duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Budd v. Nixen, 6 Cal.3d 195, 200 (1971). The standard of care in an attorney malpractice case is "that of members of the profession in the same or a similar locality *under similar circumstances*." Wright v. Williams, 47 Cal.App.3d 802, 809 (1975) (citation omitted and emphasis added). Accordingly, Defendant argues that for Plaintiff to prove her malpractice case, she will have to go beyond the Term Sheet and rely on evidence that is inadmissible under mediation confidentiality, such as the legal advice that Defendant gave to Plaintiff, and the circumstances in which the Term Sheet was executed, including consideration of the actions and communications of the other mediation participants.

Defendant relies on multiple cases in which courts excluded evidence based on the mediation confidentiality statutes, which generally support Defendant's position, although these courts ruled at a later stage of the litigation than presented here. See Simmons, 44 Cal.4th at 588 (holding in an action to enforce a settlement agreement, that there was no implied waiver of the mediation confidentiality statutes, which made inadmissible all evidence of an oral contract between plaintiffs and defendants reached during mediation, and because there was no evidence to prove the breach of contract, the defendant was entitled to judgment as a matter of law on that claim); Foxgate, 26 Cal.4th at 18 (addressing motion for sanctions based on a party's failure to participate in mediation in good faith and holding that the plaintiff was not precluded from going forward with the motion, but that if the plaintiff elected to pursue the motion, the trial court could only consider the plaintiff's assertion and evidence in support of the assertion that the defendant engaged in sanctionable conduct, and no communications made during the mediation could be used as evidence); Wimsatt,

7

152 Cal.App.4th at 162-63 (examining "the timing, context and content" of three types of documents or communications separately under the mediation confidentiality statutes and finding that two were protected from disclosure; stating in dicta that "[p]reventing Kausch from accessing mediation-related communication *may* mean he must forego his legal malpractice lawsuit against his own attorneys.") (emphasis added); Eisendrath, 109 Cal.App.4th at 362 (holding that conversations that occurred before a spousal support agreement was signed that would allegedly show that the agreement did not accurately reflect the parties' intent, were inadmissible because the mediation confidentiality could not be impliedly waived). None of these rulings were issued prior to the parties conducting formal discovery, as here, so Plaintiff argues that it is premature to grant Defendant's motion before the requisite full examination of the "timing, content and context." See Wimsatt, 152 Cal.App.4th at 162. At the same time, Plaintiff acknowledges that the parties already have extensive discovery from the state action. Thus, this argument has less force.

Plaintiff also relies on the recent case of Cassel v. Superior Court, 2009 WL 3766430 (Cal. Ct. App. Nov. 12, 2009). In Cassel, the petitioner filed a malpractice claim against his former attorneys arising from the attorneys' representation of the petitioner in a lawsuit regarding ownership interest in a famous clothing company. See Cassel, 2009 WL 3766430, at *1. The petitioner and his counsel met with each other on August 2, 3, and 4, 2004, and participated with the opposing party and counsel in a mediation on August 4, 2004, with respect to the underlying lawsuit. See id. As a result of the mediation, the petitioner and the opposing party entered into a $1.25 million settlement agreement. See id. The petitioner subsequently brought a malpractice action against his counsel, alleging that his counsel forced him to sign the settlement agreement for $1.25 million rather than the higher amount he had told her counsel was acceptable. See id. In preparation for trial, counsel brought a motion in limine based on the mediation confidentiality statutes, seeking to exclude evidence offered by the petitioner of certain conversations and conduct between the petitioner and counsel during the August 2, 3, and 4, 2004 meetings at which they were the only participants, and which were held outside the presence of the opposing party and the mediator. See id. The trial court granted the motion in limine, but the Court of Appeals granted a writ of mandate and directed the trial court to vacate its order granting the motion in limine. See id. at *1, 7.

8

The question in Cassel was whether, as a matter of law, the mediation confidentiality statutes required exclusion of conversations and conduct solely between a client and his attorneys during meetings in which they were the sole participants and which were held outside the presence of any opposing party or mediator. See Cassel, 2009 WL 3766430, at *2. The court concluded that the communications between counsel and his client, not in the presence of opposing counsel or the mediator, and that the court characterized as "reveal[ing] nothing said or done in the mediation discussion," were not protected by confidentiality. See id. at *3, 6. The court reasoned that, in mediation, "a client and his attorney operate as a single participant." See id. at * 3. The court also found that the client and counsel in that case were not within the class of persons to be protected by the statutes since they were not "disputants." See id.; Cal. Evid. Code § 1115 (defining "mediation" as a process in which a neutral person or persons facilitates communication between the disputants to assist them in reaching a mutually acceptable agreement."). Further, the statutes were meant to encourage candor in the mediation, which the court found was not implicated when counsel was speaking only to his client. See id. at *3 ("Legislative intent and policy behind mediation confidentiality are to facilitate communication by a party that otherwise the party would not provide, given the potential for another party to the mediation to use the information against the revealing party; they are not to facilitate communication between a party and his own attorney."). Finally, the court found that the communications were for trial preparation, with trial only two weeks away, not just for mediation or creation of any documents such as mediation briefs or witness statements to be used in the mediation, and that the proximity in time to the mediation did not automatically make the communications protected. See id. at *6.

The strong dissent from the Cassel majority opinion stated that the majority's conclusion was "not only at odds with the clear language of section 1119, subdivision (a), but also inconsistent with the Supreme Court's repeated disapproval of 'judicially created exception[s]' to the mediation confidentiality statutes." Cassel, 2009 WL 3766430, at *7. In particular, the dissent noted that the majority's conclusion ignores the "for the purpose of" provision in section 1119, stating: "For that additional statutory language to have meaning, mediation confidentiality must cover statements that were not made 'in the course of' the mediation proceeding itself." See id. Further, the dissent

9

1 pointed out that the majority's interpretation of the scope of section 1119 would render superfluous
2 section 1122(a)(2), which "plainly . . . contemplates the application of mediation confidentiality
3 (absent express agreement to the contrary) to private statements made for the purpose of mediation
4 that are not communicated to the opposing party or the mediator." See id. at *8.

5 Even though Cassel is the latest word from the California appellate court on the issue of
6 mediation confidentiality, it is in significant tension with the large majority of California appellate
7 decisions that apply mediation confidentiality more expansively, and goes much further than
8 Wimsatt did with respect to the sole communication found there to be unprotected. In Wimsatt, the
9 court determined that, while mediation briefs and emails written the day before mediation containing
10 quotes from the mediation briefs were protected by the mediation confidentiality statutes, other
11 statements made by the attorney in which he purportedly improperly lowered the plaintiff's
12 settlement demand were not protected because there was no showing that the statements were linked
13 to the mediation. The Wimsatt court recognized in dicta that "[p]reventing [the plaintiff] from
14 accessing mediation-related communication *may* mean he must forego his legal malpractice lawsuit
15 against his own attorneys." Wimsatt, 152 Cal.App.4th at 162-63.

16 It appears to this Court that the reasoning of the Cassel dissent, rather than the majority, is
17 more persuasive and true to the statutory language and the California Supreme Court's injunction
18 not to create implied exceptions. See Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 939 (9th
19 Cir. 2001) ("The task of a federal court in a diversity action is to approximate state law as closely as
20 possible in order to make sure that the vindication of the state right is without discrimination
21 because of the federal forum. In doing so, federal courts are bound by the pronouncements of the
22 state's highest court on applicable state law.") (internal citations and quotation marks omitted). The
23 Cassel court's holding seems to be in tension with the broad language of section 1119. Even
24 assuming, arguendo, that a conversation between counsel and her client during the mediation, but
25 outside the presence of opposing parties and the mediator, is not made "in the course of" mediation,
26 section 1119(a) is not limited to communications made "in the course of" mediation. Rather, its
27 protections also encompass communications made "for the purpose of" or "pursuant to" mediation,
28 which must necessarily include statements that were not made in the course of the mediation itself,

10

1  or those additional provisions would be superfluous. Communications between counsel and client
2  that are materially related to the mediation, even if they are not made to another party or the
3  mediator, are "for the purpose of" or "pursuant to" mediation. Further, section 1119 protects
4  communications by and between "participants" in the course of mediation, not solely between
5  "disputants." See Cal. Evid. Code § 1119(c). Moreover, the proviso in the exception to
6  confidentiality contained in section 1122(a)(2), which allows communications made by fewer than
7  all mediation participants to be revealed upon their stipulation *only if* "the communication,
8  document or writing does not disclose anything said or done or any admission made in the course of
9  mediation," would be rendered unnecessary under the Cassel court's holding. Finally, as explained
10 by the dissent in Cassel, while the majority's analysis was focused on allowing malpractice claims
11 that hinge on communications between lawyer and client related to settlement negotiations at a
12 mediation to proceed by stripping them of mediation confidentiality, it is "for the Legislature to
13 balance competing public policies and to create an exception to the statutory scheme governing
14 mediation confidentiality where it finds it appropriate to do so." See Cassel, 2009 WL 3766430, at
15 *8. Instead, the Cassel decision appears to create an implied judicial exception to the mediation
16 confidentiality statutes. See, e.g., Foxgate, 26 Cal.4th at 14.

17     Even if the Cassel majority's decision correctly states California law, different equitable
18 considerations arise in this case. Specifically, it would be inequitable and unfair if Plaintiff could
19 provide evidence of communications with Defendant when they were alone together during the
20 mediation, but Defendant, by virtue of the mediation confidentiality statutes, could not defend
21 herself with other relevant evidence such as communications with opposing parties in the mediation
22 and/or the mediator. While a client may desire a certain term in a comprehensive settlement and
23 initially tell her attorney that she insists on it, it is not uncommon at a mediation -- when, for
24 example, opposing parties communicate a refusal to agree to that term or the mediator provides a
25 persuasive reason why it cannot be part of the settlement -- that the client accepts the need to
26 compromise and agrees to drop the condition. Thus, it would be inequitable to prevent Defendant
27 from presenting any such evidence of what was said or done in the course of, for the purpose of, or
28 pursuant to the mediation. Cf. McDermott, Will & Emery v. Superior Court, 83 Cal.App.4th 378

11

(2000) (focusing on whether the attorney-client privilege, not the mediation confidentiality statutes, bars an action for malpractice against a corporation's outside counsel: "We simply cannot conceive how an attorney is to mount a defense in a shareholder derivative action alleging a breach of duty to the corporate client, where, by the very nature of such an action, the attorney is foreclosed, in the absence of any waiver by the corporation, from disclosing the very communications which are alleged to constitute a breach of that duty.").

**Conclusion**

Given the breadth of the mediation confidentiality statutes, the centrality of what occurred during and pursuant to and for the purpose of the mediation to proving or disproving the claim in this case, and the Court's December 17, 2009 Order ruling on Defendant's evidentiary objections, it may well be that there is no admissible evidence, aside from the Term Sheet itself, to support a malpractice claim. Under these circumstances, Plaintiff may not be able to make her case against Defendant. However, the question of what evidence would be left after application of the mediation confidentiality statutes was not squarely addressed in the briefing, and it is at least conceivable that there could be other evidence that is not protected by the confidentiality statutes. As the parties already have discovery from the state action, it is questionable whether discovery here will uncover new, admissible evidence. Nonetheless, Plaintiff has not yet had an opportunity to explore this avenue. Accordingly, although summary judgment in favor of Defendant may be warranted in the future in light of mediation confidentiality, at this time, Defendant's motion is denied without prejudice.

Defendant shall file its amended answer no later than January 8, 2010. A case management conference is set for this case on January 26, 2010 at 3:00 p.m. A joint case management conference statement shall be filed no later than January 19, 2010.

**IT IS SO ORDERED.**

Dated: December 17, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge

12